# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist ANTIONE D. WILLIAMS**
**United States Army, Appellant**

ARMY 20130446

Headquarters, III Corps and Fort Hood
James L. Varley, Military Judge (arraignment)
Patricia H. Lewis, Military Judge (trial)
Colonel Stuart W. Risch, Staff Judge Advocate (pretrial)
Colonel Ian G. Corey, Staff Judge Advocate (post-trial)

For Appellant: Captain Ryan T. Yoder, JA (argued); Lieutenant Colonel Jonathan A. Potter, JA; Major Christopher D. Coleman, JA; Captain Ryan T. Yoder, JA (on brief); Major Christopher D. Coleman, JA; Captain Ryan T. Yoder, JA (on reply brief).

For Appellee: Major Anne C. Hsieh, JA; (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A. G. Courie III, JA; Major Steven J. Collins, JA; Major Anne C. Hsieh, JA (on brief); Major Michael E. Korte JA.

26 October 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

Under the facts of this case, we hold appellant cannot stand convicted of both patronizing a prostitute, to which he pleaded guilty, and rape of the same woman, to which he pleaded not guilty, for the same act. Similarly, we also hold appellant cannot stand convicted of both attempting to patronize a prostitute and attempting to sexually assault a victim–both of which he pleaded guilty to-for the same act. We also hold that a number of charges were unreasonably multiplied.

A military judge sitting as general court-martial convicted appellant, pursuant to his pleas, of one specification of attempted sexual assault, one specification of attempting to patronize a prostitute, three specifications of willful dereliction of

duty, one specification of maltreatment of a subordinate, one specification of unlawful detention, one specification of destruction of government property, one specification of abusive sexual contact, two specifications of indecent conduct, one specification of non-forcible sodomy, one specification of patronizing a prostitute, one specification of kidnapping, and one specification of violating the general article in violation of Articles 80, 92, 93, 97, 108, 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 892, 893, 897, 908, 920, 925, 934 (2006) [hereinafter UCMJ].

The military judge convicted appellant, contrary to his pleas, of two specifications of maltreatment of a subordinate, two specifications of unlawful detention, one specification of rape by displaying a loaded firearm, one specification of abusive sexual contact, one specification of indecent conduct, one specification of wrongful appropriation, one specification of non-forcible sodomy, one specification of aggravated assault with a deadly weapon, one specification of assault with the intent to commit rape, two specifications of kidnapping, one specification of communicating a threat, and one specification of violating the general article in violation of Articles 93, 97, 120, 121, 125, 128, and 134 UCMJ, 10 U.S.C. §§ 893, 897, 920, 921, 925, 934 (2006).

The military judge originally sentenced appellant to a dishonorable discharge, confinement for fifty years, and reduction to E-1. The military judge later merged for sentencing additional specifications and amended the confinement portion of the sentence to forty-five years. She also credited appellant with 418 days of pretrial confinement credit. Pursuant to a pretrial agreement, the convening authority approved only so much of the adjudged sentence as provided for a dishonorable discharge, confinement for fifteen years, and reduction to the grade of E-1. He also approved 418 days of pretrial confinement credit.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises three general issues on appeal. First, appellant alleges the military judge abused her discretion by accepting appellant's pleas to multiple specifications. Second, appellant asserts multiple specifications were either multiplicious or unreasonably multiplied. Lastly, appellant requests relief for dilatory post-trial processing. We agree with appellant that some specifications should be dismissed for the reasons stated herein. We do not find additional relief is warranted for dilatory post-trial processing. We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find them to be without merit.

## BACKGROUND

### A. *The Scheme*

The charged offenses in this case arose out of four separate incidents involving appellant and four different women. Appellant was a military police officer assigned to routine patrol duty at Fort Hood, Texas. During his patrol shift, alone and in uniform, appellant searched Internet postings on a website advertising prostitute and escort services in the local area. On each of the four occasions, appellant contacted a prostitute during his patrol shift and offered to meet her on Fort Hood to exchange money for sex. Appellant had no intention, however, of actually paying for sex. His actual plan was to meet the women and claim he was part of a police sting operation looking to arrest prostitutes on Fort Hood. He would then threaten to arrest them unless they agreed to perform sexual acts with him.

### B. *Thwarted Traffic stop of NF*

Appellant's first attempt to put his plan into effect was foiled hastily. In January 2012, NF responded to appellant's prostitution request by driving to a Fort Hood neighborhood where they agreed to meet. There, appellant flashed his police lights at her car and pulled her over. When he approached the car, he saw NF was not alone. A man was in the driver's seat. Upon seeing the man, appellant realized he could not carry through with his plan. He instead pretended to conduct a traffic stop, questioned the couple for a few minutes, and directed them to leave post.

### C. *Traffic Stop of Unidentified Female and Oral Sex*

Later that same shift, appellant tried again. He contacted another prostitute on the same website and arranged to meet her on Fort Hood to exchange sex for two hundred and fifty dollars. When she arrived alone at the designated location, appellant pulled her over, questioned her, and told her he was conducting a prostitution sting operation. She begged appellant not to arrest her, but appellant told her he could not let her go and intimidated her with stories of arresting other women under the same circumstances. Eventually, appellant said he would let her go if she performed oral sex on him. He drove her to another an isolated location on post where they both exited appellant's patrol car and he directed her to perform oral sex. She complied. When he was finished, appellant took the victim back to the neighborhood where he stopped her and let her go.

He then called his friend, Private First Class (PFC) Brandon Gay, another military police officer on duty, to boast about his actions.

### D. Traffic Stop of TB, a Prostitute with Whom Appellant was Formerly Acquainted.

In March 2012, appellant continued to search for, and contact, prostitutes through the same website, to carry out the same ruse on Fort Hood. One evening again on patrol, appellant contacted TB, a prostitute he had hired for sex on about ten previous occasions. When she arrived at the designated location, he pulled her over and told her he was part of an on-going prostitution sting operation. TB felt confused and scared when she realized she knew appellant, who had previously paid her for sexual relations. Appellant told TB he needed to "figure out" what to do next and directed TB to follow him in her vehicle to the shoppette. Once there, appellant pulled his patrol car next to TB and told her he could help her (and not arrest her) but only if she performed oral sex on him. TB protested and pleaded to be let go but appellant pressured TB and told her she was running out of time to make a decision–perform or be arrested. TB finally capitulated—appellant entered the passenger side of TB's car and TB performed oral sex on him. Once finished, he told her she was free to go and she left.

### E. Traffic Stop of RL

On 28 April 2012, while on patrol duty, appellant contacted another prostitute, RL, through the same website. RL agreed to meet appellant for sex on Fort Hood for $200 an hour. Appellant provided RL a home address where they would meet. When RL pulled into the driveway, she noticed a light coming from behind her and put her car in reverse. When she turned, she saw appellant standing outside the driver side door, with his gun drawn and pointed in her direction. He directed RL to stop the car or he would shoot. Initially, she refused, but after appellant repeated his order several times and threatened to call for back up, RL finally complied.

Appellant told RL he was part of a prostitute sting operation and directed her to park her car, exit the vehicle, and lock it. RL complied. He then searched her purse and told her to follow him. With his weapon still drawn, appellant told RL to walk in front of him and guided her to walk through a housing area to his patrol vehicle. Once at the vehicle, RL sat on the curb while appellant took RL's identification card and appeared to do something inside his vehicle on his laptop computer. RL was crying and shaking at this point. Eventually appellant told RL he was not going to arrest her for prostitution but that she was "not getting off scot-free" either. RL offered to give him $800.00 if he would let her go, but appellant declined.

Appellant got out of his car with his gun drawn and told RL to walk, directing her where to go through a housing area. RL felt the gun pointed at her back during

the walk. They walked through an open area to the backyard of a house where appellant told RL to go to the concrete patio area. RL complied. He then pushed RL forward and she fell onto her knees and elbows. Appellant unbuckled his gear belt and removed RL's shorts. Realizing he was going to penetrate her, she asked him to use a condom which she provided. Appellant acquiesced and proceeded to penetrate RL for several minutes. Once he ejaculated, appellant told RL to "run and get the hell out of here." RL picked up her shorts and purse, ran to her car, and left post. Shortly thereafter, she reported appellant's acts to law enforcement.

## LAW AND DISCUSSION

### A. Inconsistency of the Findings for Patronizing a Prostitute and Rape by Force

The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of this court are themselves convinced of appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is whether considering the evidence in the light most favorable to the government, a reasonable factfinder could have found all the elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Phillips,* 70 M.J. 161, 166 (C.A.A.F. 2011).

Pursuant to his mixed pleas, appellant was found guilty of both patronizing a prostitute and raping her by displaying a dangerous weapon.

Charge IX, Specification 3, Article 134, patronizing a prostitute requires the government prove:

(a) That the accused had sexual intercourse with another person not the accused's spouse;
(b) that the accused compelled, induced, enticed, or procured such person to engage in an act of sexual intercourse in exchange for money or other compensation;
(c) that the act was wrongful; and
(d) that under the circumstances, the conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Charge VI, Specification 1, Article 120, UCMJ, the offense of rape, requires the government prove beyond a reasonable doubt appellant caused RL to engage in a

5

sexual act, to wit: penetrating her vulva with his penis, by displaying a dangerous weapon, to wit a loaded firearm.

Appellant pleaded guilty to patronizing a prostitute, RL, and not guilty to raping her. The government, however, proved the rape. Here, the government's theory of patronizing a prostitute was limited to alleging appellant "induced, enticed, or procured" sexual intercourse. The government specifically did not charge that the act of prostitution was "compelled." The government proved that appellant did not pay RL for sex–but rather forced RL to have sex through the threat of a firearm. We hold the two theories to be inconsistent. We cannot reconcile appellant's guilt for both offenses under the facts of this case. As such, we determine patronizing a prostitute should not be approved and we conditionally dismiss the Article 134, UCMJ offense.

## B.  Unreasonable Multiplication of Charges

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts-Martial [hereinafter R.C.M.] 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). An "unauthorized conviction has 'potential adverse collateral consequences that may not be ignored,' and constitutes unauthorized punishment in and of itself." *United States v. Savage*, 50 M.J. 244, 245 (C.A.A.F. 1999) (quoting *Ball v. United States*, 470 U.S. 856, 865 (1985)).

### 1.  Sodomy and Abusive Sexual Contact

In Specification 1 of Additional Charge X, appellant pleaded guilty to non-forcible sodomy with TB. The theory of this sodomy specification was that the act of sodomy was induced by threat of arrest, therefore, not consensual or constitutionally protected. In Specification 1 of Additional Charge IX, appellant was found guilty of abusive sexual contact with TB by penetrating TB's mouth with his penis by placing her in fear of being arrested or apprehended in the faux prostitution sting operation. We hold these two charges to arise from substantially one transaction. We, therefore, conditionally dismiss Specification 1 of Additional Charge X, sodomy with TB, as an unreasonable multiplication of charges with the abusive sexual contact specifications.

Similarly, we hold same for Specification 2 of Additional Charge X, sodomy with an unidentified victim, and Specification 3 of Additional Charge IX, abusive

sexual contact with an unidentified victim. We conditionally dismiss Specification 2 of Additional Charge X, as an unreasonable multiplication of charges with the abusive sexual contact specifications.

### 2. Attempted Sexual Assault and Attempt to Patronize a Prostitute

In the Specification of Additional Charge I, appellant pleaded guilty to attempting to sexually assault NF by placing her in fear of apprehension and in the Specification of Additional Charge III, he pleaded guilty to attempting to patronize NF as a prostitute. We hold these two charges to arise from substantially one transaction. We, therefore, conditionally dismiss the Specification of Additional Charge III as an unreasonable multiplication of charges with the abusive sexual contact specifications.

### C. Dilatory Post-trial Processing

Appellant has assigned post-trial delay as error in a headnote pleading without discussion or analysis. We find no due process violation, see *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), nor do we believe additional relief is appropriate under our Article 66(c), UCMJ, power.

### CONCLUSION

The findings of Specification 3 of Charge IX (patronizing a prostitute), the Specification of Additional Charge III (attempting to patronize a prostitute), and Specifications 1 and 2 of Additional Charge X (sodomy) are conditionally set aside and DISMISSED. *See United States v. Briton*, 47 M.J. 195, 203 (C.A.A.F. 1997) (J. Effron concurring); *United States v. Hines*, 75 M.J. 734, 738 n. 4 (Army. Ct. Crim. App. 27 Jul. 2016); *United States v. Woods*, 21 M.J. 856, 876 (A.C.M.R. 1986). Our dismissal is conditioned on the corresponding gravamen offenses surviving the "final judgment" as to the legality of the proceedings. *See* Article 71(c)(1) (defining final judgment as to the legality of the proceedings). The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). Applying these factors to this case, we are confident that reassessment is appropriate. With regard to the penalty landscape, the maximum punishment remains the same and the pretrial agreement capped confinement at fifteen years. Second, appellant was tried by a military judge

7

and we have experience dealing with similar cases. Without the conditionally dismissed specifications, appellant remains convicted of abusing his position as a military policeman to commit and attempt to commit sexual offenses against four different women. Given the gravamen of the remaining offenses, we are confident that based on the entire record and appellant's course of conduct, the military judge would have imposed a sentence of at least that which was approved by the convening authority, and accordingly we AFFIRM the sentence.

We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings conditionally set aside by our decision, are ordered restored.

Judge HERRING and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8