# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class ROBERT C. DELMASTER**
**United States Army, Appellant**

ARMY 20150593

Headquarters, 82d Airborne Division (Rear) (Provisional) (convened)
Headquarters, 82d Airborne Division (action)
Christopher T. Fredrickson, Military Judge
Lieutenant Colonel Susan K. McConnell, Staff Judge Advocate (pretrial)
Colonel Travis L. Rogers, Staff Judge Advocate (recommendation & addendum)

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Matthew L. Jalandoni, JA (on brief); Colonel Mary J. Bradley, JA; Major Julie L. Borchers, JA; Captain Zachary A. Szilagyi, JA (on reply brief).

For Appellee: Colonel Tania M. Martin, JA; Captain Allison Rowley, JA; Captain Jonathan Reiner, JA; Major Michael E. Korte, JA (on brief).

31 January 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

WOLFE, Judge:

Private First Class Robert C. Delmaster appeals his convictions for raping and committing lewd acts against his daughter, HD, as well as making a false official statement.[1] HD was five years old at the time of trial. First, appellant claims that he

---

[1] An enlisted panel sitting as a general court-martial convicted appellant of two specifications of rape of a child, two specifications of lewd acts with a child, and one specification of making a false official statement in violation of Articles 120b and 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 107 (2012). The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, a reprimand, and reduction to the grade of E-1.

was deprived of his constitutional right to confront his daughter when the military judge allowed the child to testify remotely. We find the military judge did not abuse his discretion when he allowed remote testimony. Second, appellant alleges that two offenses are multiplicious in that he was convicted of both the greater and lesser offense for the same conduct. The government essentially agrees, and we therefore conditionally dismiss the lesser specification. Third, we discuss the manner in which we can consider a victim's post-trial submission to the convening authority when determining the appropriateness of a sentence.[2]

## LAW AND DISCUSSION

### A. Child Remote Testimony.

Prior to trial on the merits the government filed a motion to allow HD to testify remotely.

Under Rule for Courts-Martial (R.C.M.) 914A and Military Rule of Evidence (Mil. R. Evid.) 611(d) a military judge "must" allow a child victim of sexual abuse to testify outside the presence of the accused when the military judge determines that A) it is necessary to protect the welfare of the child witness; B) that the child witness would be traumatized by the presence of the defendant; and C) the emotional distress that the child would suffer if testifying in front of the accused would be more than *de minimis*. The trauma to the child must be attributable to the presence of the defendant and not be from the court-martial process generally.

To lay the factual foundation for its motion for remote testimony the government called four witnesses. One witness had served as HD's foster mother for over eighteen months. One witness was HD's assigned social worker. The third witness served as HD's therapist. Finally, the government called an expert witness to testify on clinical and forensic psychology.

---

[2] We considered, but do not discuss, appellant's allegation that the military judge prejudicially erred when he refused to allow the defense to voir dire the panel during sentencing. Nor do we address at length appellant's allegation that the tardy post-trial processing of his case warrants relief. Although the government's processing of the record well-exceeded the timeframe established by *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), we find no due process violation. Given appellant's relatively lenient sentence for his crimes, we determine the sentence adjudged should be approved, notwithstanding the unreasonable delay. Finally, we also considered appellant's substantive and well-reasoned *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), submission. It does not warrant relief.

The witnesses described a young intelligent girl who was coping with a multitude of problems. In addition to the charged allegations, HD had witnessed domestic violence in the house and had been placed in foster care. HD had been diagnosed with post-traumatic stress disorder.

In their briefs to this court both parties point to parts of the record that support their position. Appellant focuses on equivocal testimony on whether the trauma from HD testifying is from being in the presence of her father or just from testifying generally. Appellant also contests whether the harm to HD from testifying would be more than *de minimis*. Appellant points to evidence that indicates that HD would not be traumatized by testifying such as HD's testimony that she would like to see her father again and give him a hug. The government points to parts of the record where the witnesses describe HD being scared of her father, having bad dreams about her father, and having a generalized fear of people in uniforms.

The military judge made several findings of fact, to include that HD was currently prohibited from seeing either parent. He concluded his ruling as follows:

> After considering all the evidence. . . this [c]ourt concludes that Miss H.D. will be traumatized, not by the courtroom generally, but by the presence of the defendant. Miss H.D. has not stated that she is scared to talk about the allegations; rather, she has stated that she is scared of seeing her father in particular and has had bad dreams about her father. She will be traumatized by being in the presence of her father for the first time without being able to talk to him. Furthermore, she will be traumatized [by] having to discuss the alleged abuse in his presence, not knowing how he feels about her. Although it is probably not unique for child victims to see their victimizers for the first time in court, Miss H.D. has had to deal with some unique circumstances. She has effectively lost all contact with both her father and mother, she has no other family support, and she has fearful reminders of her father at night (through dreams) and during the day (with contact with those in the military).
>
> Considering the fact that Miss H.D. already suffers significant distress worrying about seeing her father, this [c]ourt concludes that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minim[i]s*. Miss H.D. suffers from numerous significant symptoms of trauma that are exacerbated as the trial approaches, even though she has access to her foster

> mother and therapist.  Such emotional distress is already more than *de minim[i]s*.  This [c]ourt concludes that such distress is likely to worsen if she has to testify in the presence of the accused.

The military judge "conclude[d] that allowing remote live testimony is necessary to protect the welfare of this particular child witness."  This factual finding, combined with his findings that testifying in front of appellant would cause more than *de minimis* trauma to HD were supported in the record.

A military judge's finding of necessity is a question of fact that will not be reversed on appeal unless such finding is "clearly erroneous or unsupported by the record."  *United States v. McCollum*, 58 M.J. 323, 332 (C.A.A.F. 2003) (quoting *United States v. Longstreath*, 45 M.J. 366, 373 (C.A.A.F. 1996)).  "To be clearly erroneous, a decision must strike the court as more than just maybe or probably wrong, it must strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish."  *United States v. Hoffman*, 76 M.J. 758, 763 (Army Ct. Crim. App. 2017) (quoting *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 726 (8th Cir. 2001)).[3]

Although appellant points this court to parts of the record that would have supported a different conclusion, the military judge's decision was within his discretion.

## B.  Multiplicity.

Among other sexual offenses, appellant was convicted of rape of a child for penetrating HD's mouth with his tongue.[4]  Appellant was also convicted of committing a lewd act with a child for kissing HD.  It is undisputed on appeal that both offenses targeted the same act.

---

[3] As we do not find error, we do not address whether appellant was prejudiced by the error.  However, we note that evidence against appellant included his own substantive admissions.  We further note that HD did not provide direct testimony about every offense of which appellant was convicted.

[4] Although not yet effective, we note that Congress has recently amended the definition of "sexual act" to exclude kissing offenses.  National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5430, 130 Stat. 2000, 2949 (2016).

Appellant alleges that the two offenses are multiplicious. The government concedes they are multiplicious and also concedes that – as there was no objection – the error amounts to plain error.

We will linger neither on the appropriate standard of review nor on whether the charges are multiplicious or merely unreasonably multiplied. We are convinced that given the government concession this is an appropriate instance for us to exercise our Article 66(c), UCMJ, authority to "notice" the error (regardless of whether it may have been waived or forfeited) and treat the error as preserved. Accordingly, we will conditionally dismiss the lesser specification of lewd acts with a child in our decretal paragraph.

*C. Consideration of post-trial matters when determining sentence appropriateness.*

Through their respective counsel, both appellant and HD submitted matters for the convening authority to consider when taking initial action. *See* R.C.M. 1105, 1105A.

Both submissions contain assertions of fact which are not contained in the record. Appellant, for example, asserts to the convening authority that he has been a "model inmate" and has been qualified as a "Master Gardner Intern" while in confinement. Counsel for HD asserted that "every day she still adjusts to her new 'life'" and that she "cries frequently, becomes easily agitated, and will act out in tantrums." HD's counsel further asserted that HD now goes to therapy twice a week and she "suffers from nightmares." HD's counsel asked for the findings and sentence to be approved.

Neither submission was sworn, subject to the rules of evidence, or were subject to adversarial testing in court. Neither submission was authenticated as being what it claimed to be. Indeed, as the R.C.M. 1105 matters were submitted after authentication, the military judge likely could not (even if asked) authenticate that such matters "accurately report[] the proceedings." R.C.M. 1104(a)(1). The military judge did not "preside" over a proceeding in which these matters were considered. R.C.M. 1104(a)(2).

Recently in *United States v. Tovarchavez,* we addressed whether we could consider an email included in R.C.M. 1105 matters in evaluating an alleged legal error at trial:

> The problem with considering unsworn unauthenticated matter that was never subjected to adversarial testing should be obvious. Both parties (and recently crime victims) have broad authority to unilaterally attach matters to the record of trial (the

> accused in his submission of R.C.M. 1105 matters and the
> government in assembling the record and determining
> which allied papers to include).  *See* R.C.M. 1103(b)(1).
> The Military Rules of Evidence do not—in the main—
> apply to submission of matters at Article 32, UCMJ,
> hearings or in post-trial. *See* Military Rule of Evidence
> 1101.

ARMY 20150250, 2017 CCA LEXIS 602, at *6 (Army Ct. Crim. App. 7 Sept. 2017) (mem. op.).

However, *Tovarchavez* involved a case in which we were being asked to consider unsworn unauthenticated matter contained in a post-trial submission to determine whether there was constitutional error during the trial itself.  By contrast, our superior court has stated for purposes of determining whether a sentence is appropriate this court can consider post-trial submissions.  *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988) ("information submitted to the convening authority for clemency purposes will in some instances be part of the 'record' which is considered by the Court of Military Review in determining sentence appropriateness.").

In any event, we have no reason to suspect that the documents marked as the appellant's and HD's post-trial submissions are anything other than what they appear to be, nor do we suspect in this case that the content of the submissions would have materially changed had they been subject to the rigors of adversarial testing at trial.  But perhaps the practice of a court considering unsworn, unauthenticated, and untested evidence when making the substantive determination about an appellant's freedom was an acceptable practice only because, until recently, crime victims did not have the right to submit matters adverse to the accused in post-trial.

Accordingly, in determining the appropriateness of appellant's sentence we consider the post-trial submissions.  We determine the sentence to be appropriate.

## CONCLUSION

Specification 4 of Charge I is conditionally SET ASIDE and conditionally DISMISSED.  *See United States v. Britton*, 47 M.J. 195, 203 (C.A.A.F. 1997) (J. Effron concurring); *United States v. Hines*, 75 M.J. 734, 738 n.4 (Army. Ct. Crim. App. 2016); *United States v. Woods*, 21 M.J. 856, 876 (A.C.M.R. 1986).  Our dismissal is conditional on Specification 2 of Charge I surviving the "final judgment" as to the legality of the proceedings.  *See* Article 71(c)(1), UCMJ (defining final judgment as to the legality of the proceedings).  The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we first note that our action in this case does not significantly alter the penalty landscape.[5] The gravamen of the criminal conduct within the original offenses remains substantially the same, and the specification conditionally dismissed by our decision today involves conduct encompassed in another charge. In other words, the panel sentenced appellant for essentially the same conduct encompassed in the findings of guilty we have affirmed. The remaining offenses capture the gravamen, and the seriousness, of appellant's actions. Finally, we have the familiarity and experience with the remaining offenses and can reliably determine what sentence would have been imposed at trial. We are confident the panel would have returned a sentence to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, a reprimand, and reduction to the grade of E-1, without the specification we today conditionally dismiss.

Reassessing the sentence based on the noted error and the entire record, we AFFIRM the sentence as adjudged.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[5] At trial, the military judge merged Specifications 2 and 4 of Charge I for sentencing. Consequently, our action in conditionally dismissing Specification 4 of Charge I does not change the penalty landscape one whit.