UNITED STATES, Appellee

v.

Marshand A. WOODS, Lieutenant Junior Grade
U.S. Navy, Appellant

No. 14-0783

Crim. App. No. 201300153

United States Court of Appeals for the Armed Forces

Argued February 25, 2015

Decided June 18, 2015

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN, RYAN, and OHLSON, JJ., joined.  STUCKY, J., filed a
separate opinion concurring in the result.

Counsel

For Appellant:  Lieutenant Gabriel K. Bradley, JAGC, USN
(argued); Lieutenant David W. Warning, JAGC, USN (on brief).

For Appellee:  Lieutenant Ann E. Dingle, JAGC, USN (argued);
Brian K. Keller, Esq. (on brief); Lieutenant Commander Keith
Lofland, JAGC, USN.

Military Judge:  Marcus Fulton

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Woods, No. 14-0783/NA

BAKER, Chief Judge, delivered the opinion of the Court.

Contrary to his pleas, a general court-martial composed of officer members convicted Appellant of aggravated sexual assault, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012). He was sentenced to confinement for five months, forfeiture of all pay and allowances, and dismissal. The convening authority approved the sentence as adjudged, and suspended forfeitures for a period of three months. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed. United States v. Woods, No. NMCCA 2013000153 (N-M. Ct. Crim. App. June 26, 2014). On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY DENYING A
> CHALLENGE FOR CAUSE AGAINST THE COURT-MARTIAL
> PRESIDENT, WHO SAID THE "GUILTY UNTIL PROVEN INNOCENT"
> STANDARD IS "ESSENTIAL" TO THE MILITARY'S MISSION.

In the military justice system, panel members are chosen by the same individual -- the convening authority -- who decides whether to bring criminal charges forward to trial. Article 25, UCMJ, 10 U.S.C. § 825 (2012). In this case, the convening authority selected Captain (CAPT) Martha Villalobos as the senior member of the panel that would try Appellant for sexual assault, despite having access to her preliminary member's questionnaire, in which CAPT Villalobos stated her belief that "enforcement of 'you are guilty until proven innocent' (just the

2

opposite as in the civilian sector) is essential because the military needs to be held to a higher standard just for reasons of our mission." During voir dire, CAPT Villalobos elaborated on this response, but reasonable observers could interpret her responses as confusing rather than clarifying her views. After voir dire, the military judge denied trial defense counsel's motion to strike CAPT Villalobos for cause. Given the specific facts of this case and the unique structure of the military justice system, a reasonable member of the public might well question the fairness of including CAPT Villalobos on the panel. United States v. Peters, 74 M.J. 31, 36 (C.A.A.F. 2015). As a result, we reverse on the ground of implied bias.

BACKGROUND

On October 5, 2012, in advance of Appellant's trial, CAPT Villalobos completed a court-martial member questionnaire. In response to an open-ended question regarding her view of the military justice system, CAPT Villalobos provided the response at issue in this appeal:

> [Q.] What is your opinion of the military's criminal justice system?
>
> [A.] There is not [a] perfect system, and I understand why the enforcement of 'you are guilty until proven innocent' (just the opposite as in the civilian sector) is essential because the military needs to be held to a higher standard just for reasons of our mission. It is a voluntary force and you come into the service knowing that you will be held to this higher standard[] and give up your civil rights.

3

On December 11, 2012, the convening authority relieved the panel members previously detailed to Appellant's court-martial, and assigned a new panel. CAPT Villalobos was detailed as the panel's senior member. The record does not reflect whether the convening authority reviewed CAPT Villalobos's questionnaire, but the parties agree that (1) the purpose of the questionnaire was to assess a prospective member's suitability; and (2) the questionnaire was available for review.

During voir dire, trial counsel addressed CAPT Villalobos's questionnaire response as follows:

> ATC: Okay. Now in terms of the standard for finding guilt in a court-martial, you had indicated that the enforcement of "You are guilty until proven innocent is essential in the military." Now you heard the military judge talk a little bit today. If he advises you that the standard for proof is that Lieutenant (JG) Woods is, in fact, innocent until proven guilty, and he's innocent as he sits here right now and that it's the government's burden to prove guilt beyond a reasonable doubt, could you follow the judge's instruction on that?
>
> MBR: (CAPT Villalobos): Yes.
>
> ATC: Okay. And would you also be able to follow the instruction that the burden of proof never shifts to the accused. The government always retains the burden to prove guilt.
>
> MBR: Yes.

Trial defense counsel then explored CAPT Villalobos's questionnaire response:

ADC:   You state that the -- you understand why in the military the enforcement of "You are guilty until proven innocent.  Just the opposite [as] in the civilian sector is essential, because the military needs to be held to a higher standard."  What did you mean by that?

MBR:   Well, I mean I guess just the discussions that I've had with my husband.  He's in the Army, Special Forces, and you know, this is, you know, we've talked about the military system and how we are held to a higher standard and never being -- I've never dealt officially in a court-martial, and have been told "No, this isn't the way it works," and so I understand the rules of the game, and I, you know, I don't have a problem following them.  What I meant by that is yes, us military think we should be held to a higher standard since our behavior, because you know, we raise our hand, and we are defending our country.

ADC:   Is that what you meant when you mentioned that we give up our civil rights?

MBR:   Right.

ADC:   Okay.  So do you believe that because Lieutenant (JG) Woods is a service member, he has given up his civil rights?

MBR:   Well, no, because he -- I mean obviously he hasn't, because we're here on his behalf, so that we can hear the testimony and find out if he, you know, if he's guilty or not.

ADC:   Okay.  I guess my question is do you hold him to a higher standard, because we're in a military court than you would if we were in a civilian court?

MBR:   Well, I -- so do I think we should be held to a higher standard as when we put the uniform on and as we behave and as we go about our business, we should be held to a higher standard.

5

ADC:  Okay.

MBR:  Once you are in a court of -- you know, in a court, a court of law is, you know, then it's up to the parties to -- to them to find him -- to present a case so that we were presented with the facts and see if he's guilty or not.

ADC:  Okay.  If the case were close, would you give me more -- would you, you know, aid on the side of the government, because he's in the uniform, and we should hold him to a higher standard?  Does that make sense?

MBR:  Well, it's hard for me to say if I'm in that position.  I think it depends on the facts that are presented, like, you know, if that -- I mean the facts are -- and if they have a case presented to -- in a way that yes, they prove he's guilty, that he's guilty, you know?  I mean I don't know if -- I'm not sure what you're asking me.

ADC:  And that's what I'm trying to find out, ma'am.  I'm just trying to figure out when you mention that you automatically hold him to a higher standard, because he's in the military now.  I'm just trying to figure out if the defense is already climbing the hill, because he's in the military, and you know, we're going to have to go even further than that to get a not guilty verdict.

MBR:  I don't know what happened.  I don't know any of the facts.  You know, maybe -- I mean I have no idea.  I haven't heard the case, you know.  If I see Mr. Smokatellie and Petty Officer Smokatellie out in the town, I expect that Petty Officer Smokatellie to a higher standard [sic] and not get drunk and not act like this or that, you know.  That's what I'm talking about as far as like we're held to a higher standard.

. . . .

ADC:  And then finally the last -- one of the last questions on the supplemental questionnaire asked "Do you believe the defense has to prove Lieutenant (JG) Woods'

6

innocence," and you say "No, I believe the defense is there to establish reasonable doubt." Do you mean that we don't have to do anything or do you think that we actually have to proactively try to establish reasonable doubt in the case?

MBR:  I think it's on them to prove if he's guilty or not.

ADC:  Okay.  So the burden rests solely with the government?

MBR:  Yes.

The military judge then questioned CAPT Villalobos:

MJ:  Okay.  Captain, going back to your answer to question 20, it appears that you, in fact, arrived at this court-martial with an erroneous understanding of the burden of proof in this case.

MBR:  Right.

MJ:  Is that fair to say?

MBR:  Yes.

MJ:  Okay.  And your answer also tends to indicate that you might think that there would be a good reason for the military to operate under a system like the one that you presumed that we did.

MBR:  Um-huh.

MJ:  I want to make sure in my own mind and for the record that you understand that the burden of proof in this case is on the government, that it never shifts to the defense.

MBR:  Right.  I understand that.

> MJ:  And that the obligation for a conviction in this case is that the government must prove their case beyond a reasonable doubt.  Do you understand that?
>
> MBR:  Yes.
>
> MJ:  Are you completely comfortable with that?
>
> MBR:  Yes.
>
> MJ:  You don't have any reservations in your own mind about following that instruction when I give it to you?
>
> MBR:  I don't have any reservations.

After voir dire, the defense challenged eight members for cause, including CAPT Villalobos.  The military judge granted six of the defense's challenges, but denied the challenges as to CAPT Villalobos and another panel member.  As to CAPT Villalobos, the military judge reasoned as follows:

> MJ:  With respect to Captain Villalobos, I have specifically considered the liberal grant mandate and examined her answers for actual bias as well as implied bias.  I am going to focus here for a minute on her answers to the member's questionnaire pertaining to what the relevant burden of proof is in a court-martial.  It's absolutely the case that she did arrive at this court-martial under a misapprehension of what the burden of proof is at a court-martial.  I don't find that to be disqualifying.  I evaluated her demeanor as she answered questions.  When I asked her candidly "Did you -- were you under the impression that that was the relevant standard in these cases," and she says "Yes," and she acknowledged that that was a misapprehension on her part.
>
> I asked her if she had any mental reservations at all about applying "the guilt beyond a reasonable doubt standard,"

and upon evaluating her credibility I found her to be credible when she said that she would have no mental reservations about applying the relevant standard. If the relevant standard here were that she, you know, know what the correct standards are before she gets into court in order to be qualified, then that would be a problem, but I'm convinced that she is capable of following the instructions of the court and that she's ready and willing to do so. I disagree with the defense counsel's assessment about her comments relating to holding people in uniform to a higher standard. I did not find that they were related to burdens of proof or the allocation of burdens of proof in courts-martial or civilian trials. I think in the full context of her answers she -- it was clear that she was discussing expectations of officers and Petty Officers and members of the service generally, so bearing in mind the liberal grant mandate and actual or implied bias, I find that she is capable of sitting fairly as a member in this case.

Trial defense counsel then moved for reconsideration, and the military judge expanded on his reasoning:

MJ: Well, if the member's questionnaire were a civics quiz, I'd be more inclined to see things your way. I have to say that one of the things that impressed me the most about Captain Villalobos as I was thinking about your motion to excuse her was her temperament. I observed her temperament here in court to be quite moderate and judicious actually, and she seemed to acknowledge, first of all, that her initial understanding about the allocation of burdens of proof in a court-martial was erroneous. That wasn't something that seemed she seemed to be too startled by, the fact that she had gotten that wrong on the initial questionnaire. When I explained the error in her understanding to her, she seemed to readily accept the fact that she was wrong about that and to readily express an unreserved willingness to consider this case in accordance with my instructions including those concerning the burden of proof, and so even though she was incorrect initially about a -- what's, you know, a technical legal matter, I

9

was impressed with her temperament and her ability to be
thoughtful about what would be required of her, and I was
convinced by her demeanor in court during my questioning
and the questioning of counsel that she was more than up to
the task of listening to the evidence in this case and
applying the law as I give it to her, and I'm going to
continue to adhere to my decision that she's an appropriate
member in this case.  I don't understand your objection to
be a member selection motion.  I understand it just to be
in terms of Captain Villalobos.  The method that you
describe for member selection is the one approved by the
Court of Appeals for the Armed Forces where subordinates
nominate members, and they complete these questionnaires
and the Article 25(d) guidance is given to the convening
authority.  He selects members based, not just on judicial
temperament but on the age, experience, length of service,
education, training, as well as judicial temperament, and I
don't see anything at this point that would shake my
confidence that the convening authority has appropriately
performed his Article 25(d) responsibilities.

. . . .

There's no doubt but that she did arrive at the court-
martial with a misapprehension about, you know, what the
law is at a court-martial.  In my mind, that's not
disqualifying.  The fact that, you know, she arrived with
that misperception, it[] simply doesn't convince me that
there was an error in member selection.  I'll add that I
don't find it to be evidence of unlawful command influence.
You know, I think it's just evidence that this dentist
didn't know what the law was, so I'm convinced that she's
going to fairly apply the law as I give it to her, and
that's why I have elected to retain her on the panel.

After challenges for cause, the panel fell below quorum and
was reconstituted with additional members.  The final five-
member panel consisted of CAPT Villalobos, two commanders, one
lieutenant commander, and one lieutenant.  Under Article 52,

10

UCMJ, four of the five members were required to vote "guilty" in order to convict Appellant.  Article 52(a)(2), UCMJ, 10 U.S.C. § 852(a)(2) (2012).

DISCUSSION

"A military judge's ruling on a challenge for cause is reviewed for an abuse of discretion.  Military judges are afforded a high degree of deference on rulings involving actual bias.  This reflects, among other things, the importance of demeanor in evaluating the credibility of a member's answers during voir dire.  By contrast, issues of implied bias are reviewed under a standard less deferential than abuse of discretion, but more deferential than de novo."  United States v. Downing, 56 M.J. 419, 422 (C.A.A.F. 2002) (citations omitted).[1]

---

[1] The parties contend that we should alter our standard of review and consider implied bias claims under a de novo standard, citing Article III case law.  See, e.g., Fields v. Brown, 503 F.3d 755, 770 (9th Cir. 2007); Caterpillar Inc. v. Sturman Industries, Inc., 387 F.3d 1358, 1367 (Fed. Cir. 2004); Skaggs v. Otis Elevator Co., 164 F.3d 511, 517 (10th Cir. 1996).  There is no general consensus regarding the appropriate standard of review, however, and some jurisdictions apply an abuse of discretion standard on direct review of implied bias claims arising in criminal cases.  E.g., State v. Wacht, 833 N.W.2d 455, 463–64 (N.D. 2013); People v. Furey, 961 N.E.2d 668, 670 (N.Y. 2011).  We decline to amend our standard of review, because we believe it affords an appropriate level of deference to the military judge in light of the fact that resolving claims of implied bias involves questions of fact and demeanor, not just law.

Appellant first contends that CAPT Villalobos's questionnaire response, combined with her responses in voir dire, amount to actual bias. "Actual bias is personal bias that will not yield to the military judge's instructions and the evidence presented at trial." United States v. Nash, 71 M.J. 83, 88 (C.A.A.F. 2012) (citation omitted). We decline to find actual bias in the context of this case, where the military judge concluded that CAPT Villalobos credibly expressed her intention to follow his instructions despite her initial mistaken belief as to the burden of proof employed by the military justice system. See United States v. Quintero-Barraza, 78 F.3d 1344, 1350 (9th Cir. 1995) (juror's stated belief in "guilty until proven innocent" standard "does not immediately translate into an unwillingness to abide by the oath one takes as a juror"); accord Oswalt v. State, 19 N.E.3d 241, 250–51 (Ind. 2014); People v. Olinger, 680 N.E.2d 321, 335 (Ill. 1997); State v. Thomas, 278 S.E.2d 535, 545 (N.C. Ct. App. 1981).

Appellant's next contention is that, by denying the defense's challenge and retaining CAPT Villalobos on the panel, the military judge erred as a matter of implied bias. We recently summarized our implied bias case law, and reiterated that the test for implied bias is, ultimately in the military context, one of public perception:

> R.C.M. 912(f)(1)(N) sets the basis for an implied bias challenge, which stems from the "historic concerns about the real and perceived potential for command influence" in courts-martial. Unlike the test for actual bias, this Court looks to an objective standard in determining whether implied bias exists. The core of that objective test is the consideration of the public's perception of fairness in having a particular member as part of the court-martial panel. In reaching a determination of whether there is implied bias, namely, a "perception or appearance of fairness of the military justice system," the totality of the circumstances should be considered.

Peters, 74 M.J. at 34 (citations omitted). The test for implied bias in the military has considered the public's perception of fairness since the earliest days of this Court. See United States v. Deain, 5 C.M.A. 44, 53, 17 C.M.R. 44, 53 (1954) (addressing the perception of "disinterested observers" regarding the panel's composition); see also id. ("[A]n appearance of evil must be avoided as much as the evil itself." (citing United States v. Walters, 4 C.M.A. 617, 16 C.M.R. 191 (1954))). The test takes into account, among other distinct military factors, the confidence appellate courts have that military members will follow the instructions of military judges and thus, while it will often be possible to "rehabilitate" a member on a possible question of actual bias, questions regarding the appearance of fairness may nonetheless remain.

13

The question before us, therefore, is "'whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high.'" United States v. Bagstad, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting United States v. Townsend, 65 M.J. 460, 463 (C.A.A.F. 2008)). To answer this question, we review the totality of the circumstances, and assume the public to be familiar with the unique structure of the military justice system. Id. In the context of this case, we conclude that there is "too high a risk" that the public would question the fairness of Appellant's trial. United States v. Wiesen, 56 M.J. 172, 176 (C.A.A.F. 2001).

We do not reach this conclusion through the application of a per se rule. See id. at 175. Specifically, we do not conclude that a panel member's mistake as to the proper burden of proof in a criminal trial, without more, necessarily requires a finding of implied bias. Cf. Quintero-Barraza, 78 F.3d at 1350 (noting the possibility that a juror holding such a belief may nonetheless "faithfully apply the law"). The specific circumstances of this case arising in the military justice system, however, compel such a finding.

First, the convening authority had access to CAPT Villalobos's questionnaire for over two months before she was detailed to the court-martial, and the Government concedes that

14

the convening authority had at least constructive knowledge of her questionnaire responses. Under the UCMJ, the convening authority is charged to select members who "in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Article 25(d)(2), UCMJ. Notwithstanding these criteria, he selected CAPT Villalobos to be detailed as the senior member of the panel.[2]

Second, CAPT Villalobos's questionnaire reflected a mistaken belief as to the burden of proof to be employed in courts-martial, and reasonable observers may disagree on whether her voir dire responses, reproduced above, convincingly demonstrated a departure from that view in light of her statements about "giv[ing] up your civil rights" and applying a "higher standard" in the military and/or military courts. The notion that criminal defendants are innocent until proven guilty is at the core of our judicial system, and "the practice which flowed from it has existed in the common law from the earliest

---

[2] We recognize that Appellant does not present a claim of improper member selection under Article 25, UCMJ, and we do not sua sponte raise the issue. This Court considers "the totality of the circumstances" in reviewing claims of implied bias. Peters, 74 M.J. at 34. In the military context, the test for implied bias "stems from 'historic concerns about the real and perceived potential for [unlawful] command influence in courts-martial.'" Id. Thus, the convening authority's selection of CAPT Villalobos as the senior member of the panel under Article 25, UCMJ, is part of Appellant's implied bias claim.

time."  Coffin v. United States, 156 U.S. 435, 455 (1895).
Members are not and should not be charged with independent
knowledge of the law.  This is not just any principle of law,
however; it is one of the fundamental tenets of U.S. criminal
law that predates the founding of the republic.  See James Q.
Whitman, The Origins of "Reasonable Doubt," Yale Law School
Faculty Scholarship Series, Mar. 2005, at 7 ("'[I]f you doubt of
the prisoner's guilt, never declare him guilty; that is always
the rule'" (quoting John Adams who served as defense counsel to
British soldiers accused in the 1770 Boston Massacre trials)).
Moreover, as Appellant asserts, CAPT Villalobos understood the
burden of proof generally applied in criminal trials, and
believed that the military had good reason to operate under the
opposite framework.

Finally, the military judge did not view CAPT Villalobos's
questionnaire response and voir dire as representing a close
case, but rather credited her temperament and demeanor in
denying the challenge for cause.  The military judge also noted
that CAPT Villalobos's statement that military members "give up
their civil rights" was not incorrect, because Appellant has
"given up the right to trial by members or by a civilian jury, a
unanimous verdict."  Ultimately, the military judge concluded
that CAPT Villalobos's mistaken belief as to the burden of proof
in criminal law related to "a technical legal matter."  In our

16

view, this analysis could impact the public's perception of fairness. An informed member of the public might well, ask why, absent any operational military necessity, the military judge retained CAPT Villalobos as the senior member of this five-member panel.

## CONCLUSION

"[I]f after weighing the arguments for the implied bias challenge the military judge finds it a close question, the challenge should be granted." Peters, 74 M.J. at 34. In view of the considerations raised above, we believe the defense challenge to CAPT Villalobos's participation on the panel presented, at minimum, a close question. Thus, particularly in view of the liberal grant mandate, the military judge erred in denying the defense challenge for cause on grounds of implied bias, and that error prejudiced Appellant's substantial rights. Article 59(a), UCMJ.

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing is authorized.

17

STUCKY, Judge (concurring in the result):

I concur in the result -- the military judge erred in not granting the defense challenge for cause against Captain Villalobos.  I disagree with the majority's conclusion that this is a case of implied bias.

Federal courts generally recognize two forms of bias that make a juror subject to a challenge for cause:  "actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law."  United States v. Wood, 299 U.S. 123, 133 (1936).  Actual bias and implied bias are legal terms of art.  Contrary to much of this Court's jurisprudence, see, e.g., United States v. Armstrong, 54 M.J. 51, 53 (C.A.A.F. 2000), actual bias and implied bias are separate grounds for challenge, not just separate tests.

Actual bias is defined as "bias in fact."  Wood, 299 U.S. at 133.  It is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality."  Fields v. Brown, 503 F.3d 755, 767 (9th Cir. 2007) (quotation marks and citation omitted); see Black's Law Dictionary 192 (10th ed. 2014) ("Genuine prejudice that a . . . juror . . . has against some person or relevant subject.").

Implied bias, on the other hand, is "bias conclusively presumed as [a] matter of law."  Wood, 299 U.S. at 133.  It is "bias attributable in law to the prospective juror regardless of

actual partiality." Id. at 134 (emphasis added); see Black's Law Dictionary, supra, at 192 ("Bias, as of a juror, that the law conclusively presumes because of kinship or some other incurably close relationship; prejudice that is inferred from the experiences or relationships of a . . . juror . . . ."). For example, the law conclusively presumes that the person who forwarded the charges with a personal recommendation as to their disposition is biased, without determining whether she is actually biased. See Rule for Courts-Martial (R.C.M.) 912(f)(1)(I). Implied bias is not the majority's ambiguous concept of the public's perception of the fairness of the military justice system. See United States v. Woods, __ M.J. __, __ (13) (C.A.A.F. 2015) (citing United States v. Peters, 74 M.J. 31, 34 (C.A.A.F. 2015)). If there is evidence from which an inference can be drawn that the member will not be impartial, as is the case here, or may be unlawfully influenced, that is actual bias.

The President has delineated fourteen grounds for challenging court members for cause.

> A member shall be excused for cause whenever it appears that the member:
>
> (A) Is not competent to serve as a member under Article 25(a), (b), or (c);
>
> (B) Has not been properly detailed as a member of the court-martial;

(C) Is an accuser as to any offense charged;

(D) Will be a witness in the court-martial;

(E) Has acted as counsel for any party as to any offense charged;

(F) Has been an investigating officer as to any offense charged;

(G) Has acted in the same case as convening authority or as the legal officer or staff judge advocate to the convening authority;

(H) Will act in the same case as reviewing authority or as the legal officer or staff judge advocate to the reviewing authority;

(I) Has forwarded charges in the case with a personal recommendation as to disposition;

(J) Upon a rehearing or new or other trial of the case, was a member of the court-martial which heard the case before;

(K) Is junior to the accused in grade or rank, unless it is established that this could not be avoided;

(L) Is in arrest or confinement;

(M) Has formed or expressed a definite opinion as to the guilt or innocence of the accused as to any offense charged;

(N) Should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.

R.C.M. 912(f)(1).

The grounds listed in (A)–(B) are statutory grounds for disqualification. Those listed in (C)–(L) are grounds for an implied bias challenge: there is no evidence that such court members would be biased, but we conclusively presume they are

because of their status or participation in the justice process. The grounds listed in (M) and (N) are, in essence, the definition of actual bias -- there is evidence that such members are not impartial or from which the military judge may infer they would not be.

Although Appellant argues both actual and implied bias, his argument sounds in actual bias. He is asserting that Captain Villalobos's misunderstanding of the presumption of innocence and the burdens of proof and persuasion would compromise her ability to decide his case impartially. This is the very definition of actual bias. This is not a case of implied bias.

Whether a prospective juror "is biased has traditionally been determined through voir dire culminating in a finding by the trial judge concerning the [prospective juror's] state of mind." Wainwright v. Witt, 469 U.S. 412, 428 (1985). "[S]uch a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." Id. It is "plainly [a question] of historical fact; did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." Patton v. Yount, 467 U.S. 1025, 1036 (1984).

4

An appellate court reviews a trial court's findings of fact for "clear error."[1]  Easley v. Cromartie, 532 U.S. 234, 242 (2001); see United States v. Olsen, 704 F.3d 1172, 1190 (9th Cir. 2013) (ultimate determination of actual bias is reviewed for clear error), cert. denied, 134 S. Ct. 2711 (2014); United States v. Powell, 226 F.3d 1181, 1188 (10th Cir. 2000). Reviewing courts "will not reverse a lower court's finding of fact simply because we would have decided the case differently. Rather, a reviewing court must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed."  Cromartie, 532 U.S. at 242 (quotation marks and internal citations omitted).

After reviewing the entire voir dire of Captain Villalobos, I am left with the firm conviction that the military judge erred in believing Captain Villalobos's protestations of impartiality. I, therefore, concur in the result.

---

[1] In Yount, a habeas proceeding, the Supreme Court seems to have applied a "manifest error" test in reviewing the impartiality of the jury as a whole.  467 U.S. at 1031.