# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
RISCH, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant MONTRELL L. MAYO**
**United States Army, Appellant**

ARMY 20140901

Headquarters, Fort Carson
Douglas K. Watkins, Military Judge
Lieutenant Colonel Stephanie D. Sanderson, Staff Judge Advocate (pretrial)
Colonel Paul J. Perrone, Jr., Staff Judge Advocate (post-trial)

For Appellant: Captain Joshua G. Grubaugh, JA (argued), Lieutenant Colonel
Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Joshua G. Grubaugh,
JA (on brief); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA;
Captain Joshua G. Grubaugh, JA (on reply brief).

For Appellee: Captain John Gardella, JA (argued); Colonel Mark H. Sydenham, JA;
Lieutenant Colonel A.G. Courie III, JA; Major Cormac M. Smith, JA; Captain John
Gardella, JA (on brief).

7 April 2017

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

Appellant pleaded not guilty to the murder of his fiancée, Sergeant (SGT)
KW. However, the fact appellant killed SGT KW was not seriously contested at
trial. The opening statement of appellant's defense counsel included the following
concession: "Members, there is *no doubt* that either through a combination of
Sergeant Mayo's actions or his inactions, that he killed Sergeant [KW]." (emphasis
added). The evidence (which included forensic evidence and appellant's multiple
confessions) overwhelmingly demonstrated appellant struck SGT KW over the head
with an object and then caused her death through strangulation or suffocation.

Instead, the defense's focus at trial was to minimize appellant's *mens rea* and avoid the mandatory minimum sentence that accompanies a conviction for premeditated murder. Appellant was ultimately unsuccessful, and a panel of officers convicted appellant, contrary to his pleas, of one specification of premeditated murder and one specification of assault consummated by a battery in violation of Articles 118 and 128, Uniform Code of Military Justice, 10 U.S.C. § 918, 928 (2012) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for life without eligibility for parole, forfeiture of all pay and allowances, and reduction to the grade of E-1.

On appeal, appellant raises two assignments of error. We address in depth appellant's argument the military judge erred when he denied appellant's challenge for cause of Major (MAJ) MC and also address appellant's claim that the lack of requirement of unanimity in panel verdicts violates the Constitution.

## BACKGROUND

On Valentine's Day 2013 appellant planned a romantic getaway with his fiancée and fellow soldier, SGT KW. He rented a room at the Plaza Hotel, littered the floor with rose petals, bought multiple presents and chocolate treats, and prepared other romantic amenities. Appellant's romantic preparations, however, did not dissuade SGT KW from her plans to end the relationship.

When SGT KW told appellant she wanted to break up with him, he struck her on the head with a drinking glass several times. The blows caused lacerations to SGT KW's scalp, resulted in severe bleeding, and may have rendered her unconscious. However, the blows to the head were not fatal. Appellant would later tell other noncommissioned officers that he "thinks he killed his girlfriend," and he "strangled" her after she "threatened his career."

At trial, the parties presented and argued the evidence in support of their respective positions. The government attempted to string out the timeline in order to support its theory that appellant deliberated before deciding to finally kill SGT KW by suffocation. The defense, in contrast, attempted to shorten the timeline to support its theory that appellant was guilty of only un-premeditated murder or possibly manslaughter.

## DISCUSSION

*A. The Challenge for Cause of Major MC*

On appeal, appellant asserts four reasons that either individually or together demonstrate that the military judge abused his discretion in denying appellant's

challenge for cause to MAJ MC. However, only two of the bases asserted on appeal were preserved at trial.

*1. Unpreserved Bases for Challenge for Cause*

During individual voir dire the trial counsel elicited that she and MAJ MC had worked in the same building for about three months, MAJ MC had deployed with the trial counsel's father, and MAJ MC was aware she had been working on "a murder trial." The trial counsel further elicited she and MAJ MC would run into each other about once a week, and would have passing conversations about ". . . how are you doing? How was your weekend? That kind of thing." Major MC stated that he knew "nothing" about the case she had been working on, and nothing about their acquaintance would affect his impartiality.[1]

While being questioned by the trial counsel, MAJ MC volunteered that his wife's uncle had been murdered "several years ago." Major MC stated he was not close with this uncle-in-law, and his knowledge of the case was based on what his wife's family had told him. He stated the murderer admitted his crime to a "healthcare professional," but the prosecutor could not move forward with a case because the confession was privileged.

When asked how this result made him feel, MAJ MC was quite circumspect and stated, "It's a process and the way our Constitution is written, you know certain things about due process have to be adhered to no matter what. Sometimes you can't do anything about certain things." When asked if he felt frustrated by the prosecutor's inability to use the confession he stated, "I understood why. I mean, I've got several different professional folks in my family." When asked if "there was anything about this experience that would make it difficult for you to sit on this panel?" he stated, "No."

Appellant did not challenge MAJ MC based on his prior relationship with the trial counsel or assert that he was biased based on his wife's uncle's murder.

In *United States v. McFadden*, our superior court made clear that the burden of establishing a legal and factual basis to support a challenge for cause is on the party making the challenge. 74 M.J. 87 (C.A.A.F. 2015). The Court of Appeals for the Armed Forces (CAAF) specifically stated that while a military judge may remove a member for cause sua sponte, he has no duty to do so. *Id*. at 90.

---

[1] It is possible, even likely, the "murder case" the trial counsel had been working on was the case at bar. However, it was never clarified. The defense counsel did not ask any questions regarding MAJ MC's relationship with the trial counsel.

More recently, the CAAF reaffirmed this framework in the case of *United States v. Dockery*, 76 MJ __ (C.A.A.F. 2017). In that case, the government challenged a panel member only for actual bias. The military judge removed the member because of his concerns for implied bias. The CAAF described the military judge's actions as being "sua sponte." *Id*. at *2 and *8 n.3. That is, consistent with *McFadden*, as the government's challenge was only to actual bias the military judge's removal of the member for implied bias was a sua sponte act and not a grant of the government's challenge.

Accordingly, the rules require "[t]he party making a challenge *shall* state the grounds for it" and "[t]he burden of establishing that grounds for challenge exist is upon the party making the challenge." Rule for Courts-Martial [hereinafter R.C.M.] 912(f)(3) (emphasis added). If the military judge had a duty to sua sponte exclude a member for reasons not asserted, then the burden would no longer be upon the moving party to establish the basis for a challenge. "[T]he burden of establishing grounds for a challenge for cause rests upon the party making the challenge." *United States v. Wiesen*, 57 M.J. 48, 49 (C.A.A.F. 2002); *United States v. Hennis*, 75 M.J. 796, 830 (Army Ct. Crim. App. 2016).

There is wisdom in this framework. At the voir dire stage of a court-martial, a military judge is poorly positioned to know what the significant issues in the case will be and must rely on the parties to develop the record and make an appropriate challenge. Here, for example, MAJ MC stated that he was not "close" to his wife's uncle. Perhaps they never met. Perhaps they had met numerous times but in MAJ MC's eyes were not "close." Similarly, what were the motives and circumstances surrounding the murder? Was it grossly similar or dissimilar to this case? These are the unanswered questions the parties could have developed at trial to support their respective positions.

Placing a sua sponte duty on the military judge to remove a panel member for cause for reasons unstated by counsel would necessarily create a duty for the military judge to inquire, at least on the margin, to try to answer these questions. If the military judge has a duty to remove a panel member because of a basis that the challenging party does not assert, the military judge will have a concomitant duty to probe into all unanswered questions. As is often the case, a military judge during voir dire knows little about the case, the evidence, or the parties' theories at trial, which makes a judge poorly positioned to determine whether any one issue is important to the case.

Consider in this case, shortly after the conclusion of voir dire, appellant's counsel would concede in his opening that statement appellant caused SGT KW's death (although, obviously, without conceding guilt to premeditated murder). Thus, the substantive issues the panel was required to resolve were substantially different than in a case where, for example, identity of the assailant or the applicability of

self-defense is the key question for the members. Given the defense's theory of the case, which at the time of voir dire was perhaps known only to them, it was the defense who was best-positioned to determine whether MAJ MC's wife's uncle's murder was a valid basis for a challenge for cause—or not.[2]

Accordingly, as appellant did not challenge MAJ MC for cause based on his prior relationship with the trial counsel or the murder of his wife's uncle several years prior, we find that the military judge did not err in failing to grant the challenge on grounds never raised. Additionally, even when a military judge does sua sponte remove a member for cause, our superior court has described this remedy as "drastic." *McFadden,* 74 M.J. at 90. Based on the undeveloped record such a remedy was not required.

### 2. Preserved Bases for Challenge for Cause

"This [c]ourt's standard of review on a challenge for cause premised on implied bias is less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (internal quotation marks omitted) (citations omitted). Under this standard, "[w]e do not expect record dissertations but, rather, a clear signal that the military judge applied the right law." *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002). Indeed, "where the military judge places on the record his analysis and application of the law to the facts, deference is surely warranted." *Id.*

As the CAAF has previously made clear, however, "[w]e will afford a military judge less deference if an analysis of the implied bias challenge on the record is not provided." *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015). In cases where less deference is accorded, the analysis logically moves more toward a de novo standard of review.

In short, we review an implied bias challenge for cause on a sliding scale of deference that depends on how thoroughly the military judge placed his findings on the record. Recently, the CAAF reaffirmed the standard of review in cases involving allegations of implied bias. *United States v. Woods*, 74 M.J. 238, 243 n.1 (C.A.A.F. 2015).

---

[2] We note while appellant asserted issues of ineffective assistance of counsel, both as an assigned error and pursuant to *Untied States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant does not claim that his counsel was deficient in failing to either sufficiently voir dire MAJ MC or adequately state a challenge for cause. The assigned error of ineffective assistance of counsel (which concerned advice on post-conviction parole) was withdrawn prior to the completion of this appellate review. We determine the issues personally submitted by appellant do not merit relief.

"The core of the implied bias test is the consideration of the public's perception of fairness in having a particular member as part of the court-martial panel." *United States v. Rogers*, 75 M.J. 270, 271 (C.A.A.F. 2016) (internal citations omitted).

Appellant limited his challenge for cause of MAJ MC to an implied bias challenge based on two theories.[3] The first involved MAJ MC's allegedly close relationship to law enforcement. The second focused on MAJ MC's "sensitivity" to issues of domestic violence based on his wife's experience with her ex-husband. The military judge denied the challenge. In doing so, he made an extensive ruling regarding MAJ MC's sensitivity to domestic violence but did not address in any detail why he denied the challenge for cause with regards to MAJ MC's relationship to law enforcement. Accordingly, while we review the "totality of the circumstances" we give more deference to the military judge's assessment of MAJ MC's "sensitivity" to domestic violence and review nearly de novo the challenge based on his relationship with law enforcement.[4]

*a. Law Enforcement*

Major MC informed the parties that he had some law enforcement training. He explained that he worked for the Kentucky Labor Department investigating "wages and hours" violations by employers. He did this job for about eighteen months and received training in investigative techniques. Specifically, he received training on interviewing the employer and gathering evidence such as "time cards." He also investigated working conditions and child labor practices. He described his work as "administrative," not criminal, and the investigative techniques were "basic common sense. . . . What would a reasonable person do sort of procedures." He also stated his father had served as a Fish and Game officer and a corrections officer while he was growing up, and his brother served in the Army Reserve as a Lieutenant Colonel in the Military Police. He clarified his brother had not "really worked a lot [sic] law enforcement," and "[m]ost of his stuff has been military command related and UCMJ-type things that nonjudicial punishments for different folks in his organization and so on." Major MC's explanation of his brother's duties is consistent with our understanding of the duties of a commissioned officer in the Military Police.

---

[3] The military judge considered the challenge on the basis of both actual bias (though not specifically asserted) and implied bias, and stated that he considered the mandate to liberally grant defense challenges for cause.

[4] We address the two grounds for challenge separately because they are factually unrelated and because of the military judge's different treatment of the two issues. Nonetheless, we also consider the totality of the circumstances and their combined effect. *See United States v. Terry*, 64 M.J. 295 (C.A.A.F. 2007).

As the military judge did not explain his reason for denying the challenge, we review the denial of the challenge on this ground nearly de novo. Nonetheless, we find no error. Major MC's connection to law enforcement is tenuous and does not appear to be recent. To the extent that these issues were developed at trial—which is to say not much—they would not undermine the public's perception of fairness in having MAJ MC sit as a member of appellant's court-martial. Assisting the Kentucky Department of Labor in administrative investigations into labor law violations would not cause a reasonable member of the public to question the fitness of MAJ MC. Likewise, MAJ MC's father's service as a Fish and Game and corrections officer, and his brother's service as a Military Police officer (but not one conducting criminal investigations) would not call into question the appearance of fairness in the military justice system. We likewise find nothing to support that MAJ MC held actual bias against appellant based on his experience with law enforcement.

*b. Sensitivity to Domestic Violence*

In response to a question by the defense regarding "interactions with domestic violence," MAJ MC stated that his wife's "ex-husband had pushed her around a bit so that's some experience there[, a]s far as personal, no." When asked whether his wife's background "shaped or contributed to your attitudes at all about domestic violence," MAJ MC responded, "Somewhat, yes." When asked for further explanation, he told the military judge the following:

> I mean, it's a, I guess, a relationship in many cases can be
> a very emotional and for some people it's a very volatile
> experience especially in this particular--I--my wife's case
> her ex-husband was an alcoholic and when he would drink
> is when he would get physical and he only got physical
> with her a couple of times according to her, but it was
> enough for her to report it to his command at the time.
> So, I'm very sensitive to it.

The trial counsel rehabilitated MAJ MC by asking whether there was "anything about your sensitivity that would make it difficult for you to fairly listen to the evidence in this case and make a determination based on just the facts in this case?" Major MC responded, "No."

Appellant then challenged MAJ MC for cause, stating:

> [T]he defense would challenge [MAJ MC] on the basis of
> implied bias. Given . . . his wife's experience with
> domestic violence. While he did state that he would not let
> that affect his judgment in this case, he did state he was

7

> sensitive to it, that his wife would still be emotional about that particular aspect of her previous relationship and it's asking too much.

As we explain below, although the challenge was one only of implied bias, the defense counsel's argument raised both actual bias and implied bias. When MAJ MC stated he was sensitive to issues of domestic violence, this comment raised more the issue of actual bias. When MAJ MC explained his wife's prior experience regarding domestic violence, it raised more the issue of implied bias. The government objected to the challenge. The military judge properly considered the challenge as raising both actual and implied bias. "[A] challenge for cause . . . encompasses both actual and implied bias" as they are "separate legal tests, not separate grounds for challenge." *United States v. Armstrong*, 54 M.J. 51, 53 (C.A.A.F. 2000).[5] The military judge denied the challenge for cause as follows:

> Now I've considered the challenge for cause on the basis of both actual and implied bias and the mandate to liberally grant defense challenges. That challenge is denied because of the reasons stated by the government and I'll also note that having observed MAJ [MC's] demeanor he was very emphatic that the issues in his wife's life that occurred in the 1990s would not affect him in this case. He was very open to the idea that domestic violence issues can be caused by either party and I interpreted that to mean gender. And very emphatic that he would only judge this case on the basis of the facts presented in this case. The fact that his wife would become sensitive to a domestic violence or sensitive and emotional if her domestic violence case was raised to her,

---

[5] As discussed above, the CAAF's recent decision in *Dockery* appears to contradict this holding in *Armstrong* but without specifically overruling it. In *Dockery*, the challenge for cause was only based on *actual* bias but the military judge granted the challenge for *implied* bias. *Dockery*, 75 M.J. at *7. The *Dockery* court repeatedly described this as a sua sponte removal of a member and perhaps implied the military judge was not required to consider the challenge for implied bias. *Id.* at *2 and *9. Under *Armstrong*, presented with a challenge for cause, the military judge would be required to consider a challenge for cause for both actual and implied bias, and the removal for cause would not be sua sponte. However, in any event, resolving the assigned error in this case does not turn on interpreting *Armstrong* in light of *Dockery*. As the military judge here considered the challenge as raising both actual and implied bias, whether it was required or discretionary consideration of both actual and implied bias is of no importance.

> it really has no impact on Major MC. He was very clear
> that he can decide this case fairly and impartially and that
> this issue won't affect him. So that challenge is denied.

As the test for implied bias and actual bias is substantially different—they are "separate legal tests" under *Armstrong*—on appeal we will attempt to parse the facts and law and address them separately.

Our superior court recently reiterated that where "actual bias is found, a finding of implied bias would not be unusual, but where there is no finding of actual bias, implied bias must be independently established." *Dockery*, 75 M.J. at *18 n.6 (C.A.A.F. 2017) (citing *Clay*, 64 M.J. at 277).

On appeal, appellant conflates the issues of actual and implied bias and argues MAJ MC's statement he is "very sensitive" to domestic violence is the basis for an implied bias challenge. Based on our understanding of the CAAF's case law on the matter, we disagree. We see the implied bias test as looking at how "most people" (i.e., an objective member of the public) would view the bias of someone in MAJ MC's shoes, "regardless" of MAJ MC's claims about how he actually feels. That is the difference between a test for actual bias and implied bias. Under appellant's view, the subjective impressions of a panel member could alone be the basis for an implied bias challenge. This view ignores the clear guidance the implied bias test looks from the perspective of an objective member of the public without regard to the personal feelings of the member, and the CAAF's requirement when "there is no finding of actual bias, implied bias must be independently established." *Clay*, 64 M.J. at 277. Moreover, under appellant's reasoning any test for actual bias would always be subsumed by the test for implied bias.

With that framework established, we understand the questions before for us on appeal to be as follows:

*i. Is Major MC Actually Biased?*

Major MC's statement he is "very sensitive" to issues of domestic violence raises the issue of actual bias. That is, is MAJ MC actually biased against persons accused of domestic violence? In reviewing questions of actual bias on appeal we are required to give deference to the military judge's assessment of MAJ MC's fitness and candor. *United States v. Briggs*, 64 M.J. 285, 286 (C.A.A.F. 2007) ("Because a challenge based on actual bias is essentially one of credibility, and because the military judge has an opportunity to observe the demeanor of court members and assess their credibility on voir dire, a military judge's ruling on actual bias is afforded deference) (internal citations and quotations omitted).

9

"[A] member is not per se disqualified because [the member] or a close relative has been a victim of a similar crime." *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996) (citations omitted). Affording the military judge the deference due, and noting his specific findings regarding MAJ MC's demeanor, we find that the military judge did not abuse his discretion in finding no actual bias on the part of MAJ MC.[6]

*ii. Is Major MC Impliedly Biased?*

Major MC's statement his wife was "pushed around" a "couple of times" by her ex-husband in the mid-1990s also raises the question of implied bias. That is, "regardless of an individual member's disclaimer of bias," would an objective member of the public find that "most people in the same position would be prejudiced [that is, biased]." *United States v. Briggs*, 64 M.J. 285 (CAAF 2007); *see also United States v. Napolitano*, 53 M.J. 162, 167 (C.A.A.F. 2000). Here, we look less at MAJ MC's statements and focus on how a member of the general public would objectively perceive MAJ MC's statements. "The test for implied bias in the military has considered the public's perception of fairness since the earliest days [of the Court of Military Appeals.]" *Woods*, 74 M.J. at 243. "The question before us, therefore, is 'whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high.'" *Id.* at 243-44 (internal citations omitted).

Again, we do not find that the military judge abused his discretion. An objective member of the public is unlikely to question the fitness of a panel member because, well over a decade ago, his wife was "pushed" around a "couple" of times by her then husband. In *Terry*, a panel member's participation in a rape trial did not create implied bias, despite that member's spouse having been sexually assaulted "at least ten, and perhaps as many as twenty years" before the court-martial. 64 M.J. at 304. While we find that the military judge's ruling is likely due some deference under our superior court's sliding scale standard of review for issues of implied bias, it does not much matter. The passage of time and the dissimilarities in the degree of violence both weigh heavily against finding any implied bias. Major MC did not personally witness any domestic violence, the instances of domestic violence were

---

[6] There was little or no prior history of domestic violence between appellant and SGT KW. In objecting to the challenge, the trial counsel proffered as much to the military judge. Except for the trial counsel's rehabilitation efforts, no one developed at trial what MAJ MC meant when he said he was very sensitive to domestic violence. If he meant only that he thinks domestic violence is wrong, such a view would unlikely be a basis for challenge under either actual or implied bias. And, since murder was the case at bar, it is likely every panel member was, in that sense, sensitive to the issue of murder.

very remote in time, and the conduct in question was "pushing" rather than being strangled or suffocated to death. On top of these facts, and to the extent we may consider it, we have the military judge's specific findings on MAJ MC's demeanor in answering questions.[7]

## B. Non-unanimous Panel

Appellant assigns as error his rights under the Fifth, Sixth, and Eighth Amendments were violated when he was convicted and sentenced to life without the possibility of parole by a court-martial panel that was not obligated to return a unanimous verdict. Appellant dutifully noted contrary case law.

The decision to allow non-unanimous verdicts was a policy decision made by Congress during the crafting of the UCMJ. In those post-World War II years a preeminent concern was the danger posed by unlawful command influence. *See* House Armed Services Committee Report, H.R. Doc. No. 491, 81st Cong., 1st Session (1949) at 606 (statement of Prof. Edmund M. Morgan). A requirement for a unanimous panel decision, while having obvious advantages in truth-determination, would also undercut several protections against unlawful command influence that exist under current military justice practice. As these may be non-obvious considerations, we address them briefly.

---

[7] In *Woods*, the court clarified what had long been a somewhat open question: when determining a question of implied bias may a military judge consider the panel member's demeanor when answering questions. 74 M.J. at 243. Put differently, when considering a question of implied bias, is the objective test conducted from the viewpoint of a hypothetical member of the public sitting in the gallery (and seeing and hearing the panel member)? Or, is the objective member of the public reading a cold transcript? If the former, the member of the public has the same information as the military judge and the military judge's assessment of demeanor may, on the margin, make the difference between granting and denying the challenge for implied bias. If the latter, the military judge's assessment of demeanor is likely irrelevant. The CAAF appears to have answered this question when it stated that "resolving claims of implied bias involves questions of fact *and demeanor*, not just law." *Id.* (emphasis added); *see also United States v. Hines*, 75 M.J. 734 (Army Ct. Crim. App. 2016). In this regard, the military judge ruled consistently on defense challenges. With regards to appellant's challenge for cause of Lieutenant Colonel (LTC) CK, the panel member's demeanor caused the military judge to *grant* the defense challenge for bias. Specifically, the defense argued LTC CK expected the defense to tell their side of the story and "would make the proceedings when looked from the outside in look unfair and impartial." The military judge's assessment of LTC CK's demeanor (that he was too emphatic) caused him to grant the defense's challenge.

First, a requirement for a unanimous panel verdict would necessarily require the public disclosure of each panel member's vote. Panel members are not anonymous; most obviously to the convening authority who detailed them to the court-martial. Currently, regardless of the verdict, an individual panel member's vote cannot be determined.[8] The non-unanimous vote allows a panel member to cast what they might perceive to be an unpopular vote. In a system of unanimous panel verdicts, each panel member's superior, subordinate, and peer would know exactly how each panel member voted in each case. Consider the current oath taken by a panel member requires them not to divulge the vote or opinion of any member—an oath which would become pointless when the unanimous verdict is read in open court. *See* R.C.M. 807(b)(2) discussion.

Second, unanimous verdicts in the civilian system require repeated voting until a unanimous decision is reached or the jury is "hung." Currently, absent the relatively rare request to reconsider a finding, a panel member's formal vote is conducted by a single secret written ballot. By contrast, unanimity requires re-voting and—when there is sharp disagreement between two panel members—one panel member's views usually must yield to the other. When deliberations must continue until there is unanimity, secret ballots would only frustrate the goal of deliberating until all panel members are in agreement. As a result, a requirement to keep deliberating until all members agree poses special concerns when one panel member outranks the other.

Military life and custom may condition a panel member to be wary of questioning the reasoning of senior members, or a senior panel member may be unaccustomed to having his or her reasoning or decisions questioned. It is unlikely that the lessons learned during a lifetime of service in a rigid hierarchical system can always be briefly suspended during deliberations. The current practice of a single secret written ballot, collected and counted by the junior member of the panel, allows a panel member to more freely vote his or her conscience. By contrast, unanimity requires continued debate until all agree. While we might presume that panel members could deliberate a case fairly without the influence of rank or position in most cases, such deliberations would proceed without the current protections provided by single a secret written ballot. *See* Dep't of Army,

---

[8] The only exception is when, in a capital case, the panel *convicts* the accused and when the panel sentences such an accused to death. UCMJ art. 25a; UCMJ art. 52. In this one instance, the required unanimity requires the effective public disclosure of every panel member's vote. However, a panel member's vote *against* conviction or a death sentence cannot be determined. If the public disclosure of a panel member's unanimous vote causes hesitation in casting a vote in favor of death, that hesitation can only inure to the benefit of the capital defendant.

Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 2-5-14 (10 Sept. 2014)

In short, current practice helps reduce the possibility of impermissible influences on panel members both inside and outside the deliberation room. These pernicious concerns of improper influence will be most acutely felt when the case involves high stakes, when the case involves infamous acts, or when the personalities involved are less likely to yield to prophylactic instructions. That is, concerns of improper influence are most likely to be a problem in the most problematic of circumstances.

Weighing the costs and benefits of unanimous or non-unanimous verdicts is a policy decision vested in the Congress. The Congress is specifically empowered to regulate the "land and naval forces." U.S. Const. art. I, § 8, cl. 14. Any change to the voting requirements contained in Article 52, UCMJ, will likely have to originate with that branch of government. If anything, the Congress's recent amendment to Article 52, UCMJ, (requiring three-fourths instead of two-thirds to convict) is a recent reaffirmation of the military practice of non-unanimous verdicts. National Defense Authorization Act of Fiscal Year 2017, Pub. L. No. 114-328, § 5235 (2016) (amending UCMJ art. 52). Ultimately, however, the requirement for non-unanimous verdicts in the military justice system is long-standing and well-settled law which we are obligated to follow. *See e.g. United States v. Loving*, 41 M.J. 213, 287 (C.A.A.F. 1994) *cert. denied* 562 U.S. 827 (2010).

## CONCLUSION

Finding no error, we AFFIRM the findings of guilty and sentence.

Chief Judge RISCH and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court