# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Julianee I. MENDOZA
### Culinary Specialist Second Class (E-5), U.S. Coast Guard

**25-003(66)**
**Docket No. 1506**

**31 March 2026**

Special court-martial sentence adjudged on 24 August 2024.

| | |
|---|---|
| Military Judges: | CAPT Emily P. Reuter, USCG |
| | CDR Bryan D. Tiley, USCG |
| Appellate Defense Counsel: | LT Justin S. Allen, USCG |
| Appellate Government Counsel: | LCDR Lorhel E. Stokes, USCG |
| Special Victims' Counsel: | Mr. Paul T. Markland |

### BEFORE
### McCLELLAND, BRUBAKER & PELL
Appellate Military Judges

BRUBAKER, Judge:

A special court-martial of members with enlisted representation convicted Appellant, contrary to his pleas, of four specifications of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ). After one specification was conditionally dismissed, Appellant was sentenced to reduction to E-1 and a bad-conduct discharge. Judgment was entered accordingly.

Appellant now asserts that: (1) there is factually insufficient evidence to support two of his three convictions; and (2) the military judge erred by denying his challenge for cause of a member.[1] We disagree and affirm.

---

[1] Appellant's specific assignments of error are:

**Background**

During a port call in New Zealand, a group of crewmembers from USCGC *Polar Star*—including Appellant and Storekeeper Second Class (SK2) M.B.—went to a local bar. One witness observed that while walking to the bar, Appellant repeatedly poked SK2 M.B and groped his buttocks. "[I]t was pretty constant. I remember one time SK2 grabbed his hands and told him like, hey, stop, like, that's not cool." R. at 979. SK2 M.B. laughed uncomfortably, "like he was trying to kind of play it off, but he did tell him to stop several times, and he, I think, made it very clear that he didn't want to be touched anymore." *Id.* at 981.

A different witness testified that while she was having her identification checked to get into the bar, she observed Appellant, who was already in the bar, grab SK2 M.B.'s buttocks. She saw SK2 M.B. look back and she told Appellant to let go. Once in the bar, the witness saw Appellant grab SK2 M.B.'s buttocks again and she again told Appellant to let go.

SK2 M.B. testified that while playing pool in the bar, he felt something grab his groin as Appellant walked by. SK2 M.B. thought perhaps it was a mistake, but Appellant walked by again and grabbed SK2 M.B.'s penis. On cross-examination, SK2 M.B. acknowledged that he did not recall Appellant touching his buttocks.

Separately, while the *Polar Star* was in drydock in Vallejo, California, Information Systems Technician First Class (IT1) M.M. woke up to the sensation of pressure on his anus. He flipped over, saw Appellant's head poked through the curtains on his rack, and realized that his shorts and underpants had been pulled down to expose his buttocks.

---

I. The evidence for Charge I Specification 2 is factually insufficient to support appellant's conviction for abusive sexual contact when the complaining witness failed to testify that the charged touching occurred and two other witnesses provided conflicting testimony.

II. The evidence for Charge I Specification 4 is factually insufficient to support appellant's conviction for abusive sexual contact on a person who is asleep when the complaining witness testimony was inherently unreliable.

III. The military judge erred by not applying the liberal grant mandate to an implied bias challenge for a member who believed some punishment should be adjudged for a conviction.

**Factual Sufficiency**

Under the revised Article 66 standard, we only review for factual sufficiency if two triggering conditions are met: (1) Appellant asserts error and requests such review; and (2) he "makes a specific showing of a deficiency in proof." Article 66(d)(1)(B)(i), UCMJ; *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024). If these conditions are met, we "may weigh the evidence and determine controverted questions of fact subject to . . . appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence." Article 66(d)(1)(B)(ii), UCMJ. The level of deference we deem appropriate is a matter within our discretion and "depends on the nature of the evidence at issue." *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024). If, after such review, we are "clearly convinced that the finding of guilty was against the weight of the evidence," we may "dismiss, set aside, or modify the finding, or affirm a lesser finding." Article 66(d)(1)(B)(iii), UCMJ.

Appellant requests we review the factual sufficiency of his convictions for abusive sexual contact by grabbing SK2 M.B.'s buttocks and by touching IT1 M.M.'s anus. For both, Appellant asserts a deficiency in proof regarding the first element of each offense: that he committed either act of sexual contact. Specifically, for the first specification, he points out that SK2 M.B. testified he did not remember a touching of his buttocks—only of his penis. Regarding the two witnesses who testified to the contrary, he notes that they offered completely different accounts and challenges their credibility. For the second specification, Appellant points to evidence that the berthing area was lit only by red light, making a positive identification more difficult, to the lack of corroborating evidence, and to IT1 M.M.'s asserted unreliability as a witness.

We conclude that this constitutes both an express request for factual sufficiency review and a specific showing of a deficiency in proof. We thus turn to our review of the evidence.

We do not discount Appellant's point that SK2 M.B., despite remembering other events at the time, had no recollection of Appellant grabbing his buttocks. Still, we give considerable deference to the fact that the members saw and heard his testimony as well as that of his shipmates and concluded that the touching occurred. SK2 M.B. was clear that he was not saying that Appellant did *not* touch his buttocks, just that he did not remember. Given his consumption

of alcohol and the more shocking nature of his penis being grabbed, we do not find his lack of memory dispositive. Two witnesses plainly saw the touchings and SK2 M.B.'s discomfort with them. And although the witnesses provided distinct accounts, we do not find them contradictory. Both witnesses testified to Appellant repeatedly touching SK2 M.B., so the fact that two witnesses saw different touches to the buttocks does not impeach the verdict.

Regarding IT1 M.M., we again give considerable deference to the fact that the members saw and heard his testimony and found him credible. IT1 M.M. was clear that despite the fog of gradually coming out of a deep sleep and realizing what was happening, he felt pressure on his anus, that his shorts and underwear had been pulled down to expose his buttocks, and that there was plenty of light to positively identify Appellant, who was his roommate, as the person whose head was sticking through the curtains staring at him.

Having conducted our review of the evidence, we are not clearly convinced that the findings of guilty to these two specifications were against the weight of the evidence. We thus conclude that they are correct in fact.

**Challenge of Member**

During individual voir dire, trial defense counsel asked a prospective member, Operations Specialist Chief Petty Officer (OSC) L.R., whether, in the event of conviction, he would "be comfortable with the punishment of no punishment beyond just the conviction?" R. at 798. OSC L.R. responded, "I feel like there--there should be some sort of punishment with a conviction. Just my personal opinion." *Id*. Trial defense counsel then advised OSC L.R. that "the judge is going to instruct you that no punishment would be an option. But I guess, from your personal belief, you know, some sort of punishment should accompany a sex offense, if you're convicted," to which OSC L.R. replied, "Yes." *Id.* at 798-99.

Following up, trial counsel stated that the military judge would instruct the members to consider all levels of punishment, including no punishment, and that he must consider those options. Asked if he understood, OSC L.R. affirmed that he did. Trial counsel then asked, "Do

you have an issue with being able to consider those options based on the evidence that you hear during sentencing?" R. at 800. OSC L.R. replied:

> Yeah. Based on the evidence during sentencing, yeah. I have to look at everything and, as instructed by the judge, if no punishment is an option, then I would have to weigh that with the same, like, how I'm looking at it with the no punishment, compared to the broad range of punishments. Look at each one.

*Id*.

Trial defense counsel then asked, "[D]o you think it would be difficult, given your personal opinion, towards the punishment for sex offenses to consider no punishment?" R. at 801. OSC L.R. answered, "I don't think it would be difficult." *Id*.

Trial defense counsel challenged OSC L.R. for cause on the basis of implied bias. The military judge denied the challenge.

We review the denial of an implied bias challenge "under a standard of review that is less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Keago*, 84 M.J. 367, 373 (C.A.A.F. 2024) (cleaned up). When a military judge places his implied bias analysis on the record, we accord greater deference. When he fails to do so, "the standard of review shifts toward de novo." *Id*. (citing *United States v. Rogers,* 75 M.J. 270, 273 (C.A.A.F. 2016)).

Implied bias is "bias conclusively presumed as a matter of law." *United States v. Hennis*, 79 M.J. 370, 385 (C.A.A.F. 2020) (cleaned up) (quoting *United States v. Wood*, 299 U.S. 123, 133 (1936)). The test for implied bias is whether, viewed objectively under the totality of the circumstances, and "through the eyes of the public, reviewing the perception or appearance of fairness of the military justice system," *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017) (cleaned up) (quoting *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008)), the presence of the member creates an intolerable risk that the public would "perceive that the accused received something less than a court of fair, impartial members." *Keago*, 84 M.J. at 372 (quoting *United States v. Woods,* 74 M.J. 238, 243–44 (C.A.A.F. 2015)).

Under the "liberal grant mandate," military judges must err on the side of granting defense challenges for cause, and if an implied bias challenge presents a "close question," the military judge should grant it. *Id*.

Applying these standards, we conclude that the military judge did not err. The military judge stated the correct law, including the liberal grant mandate, and found that the challenge did not present a close question. Beyond that, he provided limited analysis, reciting the same boilerplate explanation for each challenge he denied. This tilts our review toward de novo.

Still, the military judge did not err in concluding there was no implied bias. "[A] mere predisposition to adjudge some punishment upon conviction is not, standing alone, sufficient to disqualify a member. Rather, the test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions." *United States v. McGowan*, 7 M.J. 205, 206 (C.M.A. 1979).

Although OSC L.R. expressed a "personal opinion" that some punishment should accompany a conviction, he made it very clear that he would yield to the evidence presented and the military judge's instructions. This was not just through "predictable answers to leading questions." *Keago*, 84 M.J. at 374. In his own words, he provided a thoughtful response indicating he could and would consider all options, including no punishment. Then, responding to trial defense counsel's prodding, he attested that despite his personal opinion that some punishment should accompany a conviction, he would not find it difficult to set that aside and consider all options. The military judge had the opportunity to observe OSC L.R., and he clearly found such attestations credible.

Under these circumstances, we conclude that OSC L.R.'s inclusion as a member would not cause the public to perceive Appellant's panel as less than fair and impartial. The military judge did not err in denying his challenge for cause. *Accord Hennis*, 79 M.J. at 387.

**Decision**

We determine that the findings and sentence are correct in law and fact; and that the sentence, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as entered into the record, are affirmed.

Chief Judge McCLELLAND and Judge PELL concur.



For the Court,


Sarah P. Valdes
Clerk of the Court