*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Joseph P. PINCOLICGONZALEZ**
Staff Sergeant (E-6), U.S. Marine Corps
*Appellant*

**No. 202400290**

_____

Decided: 11 December 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Aran T. Walsh

Sentence adjudged 28 March 2024, by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of officer and enlisted members. Sentence in the Entry of Judgment: a reprimand.

For Appellant:
*Lieutenant Benjamin M. Cook, JAGC, USN*

For Appellee:
*Major Mary Claire Finnen, USMC*
*Lieutenant Matthew Parker, JAGC, USN*

Senior Judge KISOR delivered the opinion of the Court, in which Judge GANNON and Judge FLINTOFT joined.

————————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————————

KISOR, Senior Judge:

Appellant was convicted, contrary to his pleas, of one specification of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ),[1] for unlawfully using his hand to strike Corporal (Cpl) J.A.S. in the face. The case is before us on direct appeal pursuant to Article 66(b)(1)(A), UCMJ.

Appellant does not challenge the legal or factual sufficiency of his conviction, but asserts two assignments of error (AOEs): (1) whether the military judge erred in denying the Defense challenge for cause against Major Bravo for implied bias; and (2) whether the military judge erred in prohibiting the Defense from cross-examining the victim about prior violent acts he told Appellant he engaged in before the alleged assault.

## I. BACKGROUND

Appellant and Cpl J.A.S. were on an exercise onboard USS *Anchorage* in the Indian Ocean. The exercise involved units from the Sri Lankan Navy, and, after the exercise, there was a debrief led by a platoon commander. During the debrief, Cpl J.A.S. raised the point that the roster was incomplete as it did not list everyone's blood type. Corporal J.A.S. reasoned that the requirement to provide everyone's blood type was to ensure that information would be readily available to medical staff in the event of an injury. Corporal J.A.S. evidently believed Appellant was the person responsible for the incomplete roster, although Appellant stated that he did not believe the roster was his responsibility.

Appellant and Cpl J.A.S. moved a short distance away from the debrief and had a vituperative exchange of views on this issue, during which Cpl J.A.S. called Appellant a "motherf[***]er." In response, Appellant then punched Cpl

---

[1] 10 U.S.C. § 928.

J.A.S. in the face, which caused enough bleeding to require ten stitches to close the wound. The Government charged Appellant with aggravated assault.

The case went to a contested trial. During voir dire of a panel member, Major B, both trial and defense counsel explored Maj B's personal views on self-defense. Major B said he had been in three or four fights back in middle school, but none since he joined the Marine Corps.[2] In response to trial counsel's question, "was there ever a situation where you thought you were acting in self-defense," Major B responded that "I generally try not to get into a fight unless I have to defend myself."[3] The defense counsel explored this further, and the following exchange occurred:

> **DC**: And then talk about the fistfights just a little bit, you said you don't really start – or try not to get in a fight if you started a fight. Is that fair to say?
>
> **Maj. B:** I don't fight unless I feel I am being threatened.
>
> **DC:** Okay. And would you agree that if the other party is using threatening words and threatening actions, that you could act in self-defense?[4]
>
> **Maj. B:** I generally don't consider words threatening unless they are conveying a very specific threat and there's a means of backing them up.[5]

Major B went on to explain that an example of "a means of backing them up" meant that if someone was threatening to stab him but that person did not have a knife, he would not consider the words threatening.[6] He also stated that generally a better course of action is to de-escalate.[7]

The Defense challenged Major B for cause for actual and implied bias.[8] Defense counsel stated, essentially, that Major B's general statements that it

---

[2] R. at 470.

[3] R. at 470.

[4] There was no objection to this question, which strayed into hypotheticals and sought a commitment from the member.

[5] R. at 473.

[6] R. at 474.

[7] R. at 474.

[8] R. at 477.

would be better to de-escalate a situation created "an appearance of impartiality."[9] The military judge denied the challenge.[10]

At trial, Cpl J.A.S. testified about the incident. On cross-examination, defense counsel asked, "[y]ou've been in other altercations in 1st Recon Battalion before?"[11] Trial counsel objected, and the military judge sustained the objection.[12]

The military judge included the standard self-defense instruction in his findings instructions to the members.[13] Defense counsel argued in closing argument that Appellant punched Cpl J.A.S. in self-defense.[14] The members convicted Appellant of assault consummated by a battery, but acquitted him of the greater offense of aggravated assault.[15] They sentenced him to a reprimand.[16]

## II. DISCUSSION

### A. The Military Judge Did Not Err in Denying the Defense Challenge For Cause Against Major B For Implied Bias.

Appellant asserts that the military judge erred in denying the Defense challenge for cause for implied bias.[17] Appellant further asserts that because the military judge did not "recite or apply" the standard for implied bias, we should give the military judge "a less deferential standard [of review] that is closer to de novo."[18]

#### 1. Standard of Review

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides: "[a] member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial

---

[9] R. at 478. If the transcript is correct, we assume he meant partiality (bias).

[10] R. at 479.

[11] R. at 757.

[12] R. at 757; R. at 767.

[13] R. at 1141-42.

[14] R. at 1165.

[15] R. at 1216.

[16] R. at 1261.

[17] Appellant's Brief at 15. Appellant does not renew the challenge for actual bias.

[18] Appellant's Brief at 17.

doubt as to legality, fairness, and impartiality."[19] R.C.M. 912(f)(1)(N) encompasses "both actual bias and implied bias."[20] R.C.M. 912(f)(3) provides: "[t]he burden of establishing that grounds for a challenge exist is upon the party making the challenge."[21] Military judges should be "liberal in granting challenges for cause."[22]

Implied bias is bias attributable in law to the prospective juror regardless of actual partiality.[23] The test for implied bias is "whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high."[24] In asking that question, this Court will consider the totality of the circumstances and assume the public is familiar with the unique structure of the military justice system.[25]

We review a military judge's implied bias analysis under a standard of review that is less deferential than abuse of discretion, but more deferential than de novo review.[26] The Court of Appeals for the Armed Forces has explained this sliding standard of appellate review for implied bias challenges falls somewhere between de novo and abuse of discretion based on the specific facts of the case.[27]

A military judge who cites the correct law and explains his implied bias reasoning on the record will receive greater deference (closer to the abuse of discretion standard), while a military judge who fails to do so will receive less deference (closer to the de novo standard). Accordingly, the more reasoning a military judge provides, the more deference he or she will receive. Put differently, although appellate courts do not expect record dissertations from military judges when they rule on implied bias challenges, a mere incantation of the legal test for implied bias without analysis is rarely sufficient to afford the

---

[19] R.C.M. 912(f)(1)(N).

[20] *See United States v. Rome,* 47 M.J. 467, 469 (C.A.A.F. 1998) (citing *United States v. Harris*, 13 M.J. 288, 292 (CMA 1982)).

[21] R.C.M. 912(f)(3).

[22] *Rome*, 47 M.J. at 469 (citing *United States v. Smart*, 21 M.J. 15, 21 (CMA 1985)).

[23] *United States v. Hennis*, 79 M.J. 370, 385 (C.A.A.F. 2020) (quoting *United States v. Wood*, 299 U.S. 123, 133 (1936)) (quotation marks omitted).

[24] *United States v. Woods*, 74 M.J. 238, 243-44 (C.A.A.F. 2015).

[25] *See id.* at 244.

[26] *United States v. Peters*, 74 M.J. 31, 33-34 (C.A.A.F. 2015) (quoting United States v. Moreno, 63 M.J. 129, 134 (C.A.A.F. 2006)) (internal quotations omitted).

[27] *United States v. Keago*, 84 M.J. 367, 373 (C.A.A.F. 2024).

military judge abuse of discretion review in close cases.[28] Of course, it bears repeating that military judges must err on the side of granting defense challenges for cause.[29]

*2. Analysis*

a. The standard we will apply in this case is de novo.

Appellant contends, and the Government apparently does not dispute, that because the military judge did not articulate a standard for implied bias, the military judge should be reviewed under a less deferential standard that is close to de novo.[30] We agree and review this issue de novo.

b. The military judge did not err in denying the challenge.

Major B's responses to the questions were replete with common sense, and in no way indicated any type of bias, actual or implied. In response to general questions, he indicated that he had been in fistfights in middle school; that he generally tries not to fight unless he is defending himself from an actual immediate threat and, that de-escalation is usually preferable. He also agreed he would follow the military judge's instructions as to what the legal definition of self-defense is.[31] This is not a close call. We see no risk that a member of the public would perceive that Appellant received something less than a court of fair, impartial members based on the voir dire of Major B. Reviewing the military judge's denial of the challenge for cause de novo, we find he did not err.

## B. The Military Judge Did Not Err in Prohibiting Defense Counsel From Cross-Examining the Victim Prior Altercation Because Defense Counsel Had Not Laid a Proper Evidentiary Foundation.

Appellant contends that the military judge should have allowed Cpl J.A.S. to testify on cross-examination as to whether he had been in other altercations with other people.[32] Appellant's contention is that evidence that Cpl J.A.S. had been in other fights was central to his theory of self-defense, as "the Defense

---

[28] *See United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017).

[29] *See Keago*, 84 M.J. at 372 (citing *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007)). The liberal grant mandate recognizes that the interests of justice are best served by addressing potential member issues at the outset of judicial proceedings. It is intended to address certain unique elements in the military justice system, including limited peremptory rights and the manner of appointment of court-martial members.

[30] Appellant's brief at 17; Appellee's Answer at 16.

[31] R. at 473-74.

[32] Appellant's Brief at 24.

sought to admit this evidence to demonstrate that Appellant knew of [Cpl J.A.S.]'s prior violent acts, which was relevant to his reasonable belief of imminent harm."[33]

### *1. Standard of Review*

This Court reviews a military judge's decision to admit or exclude evidence for an abuse of discretion.[34] This Court also reviews a military judge's decision to limit cross-examination for an abuse of discretion.[35] An abuse of discretion occurs when a military judge's findings of fact are clearly erroneous, or if the military judge's decision is influenced by an erroneous view of the law.[36] The abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range.[37]

Military Rule of Evidence (Mil. R. Evid.) 403 provides that the military judge may exclude logically relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence.

The military judge is required to conduct a balancing test to determine if evidence is admissible under Mil. R. Evid. 403. And where the military judge places his [or her] reasoning on the record, we review the military judge's decision to admit or exclude evidence for abuse of discretion.[38] However, where the military judge fails to make an adequate record of his Mil. R. Evid. 403 analysis, we give less deference.[39] Finally, where a military judge conducts no analysis, or misarticulates the standard, we give no deference to his ruling and must instead examine the issue de novo and conduct our own balancing test.[40]

---

[33] Appellant's Brief at 24.

[34] *United States v. Grubb*, 83 M.J. 546, 552 (N-M. Ct. Crim. App. 2023) (quoting *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)) (internal quotations omitted).

[35] *United States v. Shaffer*, 46 M.J. 94, 98 (C.A.A.F. 1997) (*United States v. Buenaventura*, 45 M.J. 72, 79 (1996)).

[36] *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008).

[37] *See United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004).

[38] *See United States v. McElhaney*, 54 M.J. 120, 129-30 (C.A.A.F. 2000).

[39] *See United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

[40] *See id.*

*2. Analysis*

> a. <u>The military judge did not err in requiring trial defense counsel to lay a proper evidentiary foundation</u>.

The military judge sustained the objection to Cpl J.A.S.'s answer to whether or not he had been in another altercation before. In sustaining the objection, the military judge ruled that the Defense had not laid the proper foundation for this testimony.[41] He stated,

> I'm not foreclosing the introduction of the defense admitting character evidence as to the alleged victim's character for aggression or violence from other witnesses. And then, I'm also not foreclosing this information once the defense establishes some foundation that the accused actually was aware of this knowledge. However, absent a foundational showing that the accused was aware of this knowledge, I find it fails under a 403 analysis and that it's unduly prejudicial and has minimal probative value.[42]

We find that the military judge properly analyzed the issue of lack of foundation for relevance. Asking Cpl J.A.S. if he had been in other fights would shed no light on whether Appellant was acting in self-defense when he threw the first punch in the incident at bar, absent some foundational evidence that Appellant knew of Cpl J.A.S. either had a violent character or was afraid of him.

Appellant points to *United States v. Dobson*[43] and *United States v. James*[44] as cases supporting his contention that "prior violent acts by alleged victims in assault cases are admissible to show the defendant's state of mind for the requisite elements of self-defense."[45] Appellant further argues that, "the Defense could not have been clearer that this was the basis for the testimony it sought to elicit."[46]

Appellant's argument here fails for two related reasons. First, both *Dobson* and *James* turned on the fact that the appellants in those cases had testified

---

[41] R. at 761.

[42] R. at 762.

[43] 63 M.J. 1 (C.A.A.F. 2006).

[44] 169 F.3d 1210 (9th Cir. 1999) (*en banc*).

[45] Appellant's Brief at 30.

[46] Appellant's Brief at 30.

at trial. Therefore, the foundation in those cases for what they believed had been properly laid and had become relevant. Here, Appellant chose not to testify.[47] Second, when the military judge asked "what evidence is there [Appellant] was aware of this [altercation between Cpl J.A.S. and someone else]?"[48] Trial defense counsel stated "we can proffer to the court, but also other witnesses will testify that they know of the physical altercation between the two as well."[49] But counsel's proffer is neither evidence, nor foundation for evidence, and no witness testified about Appellant's state of mind during the incident. Appellant describes the military judge's reasoning as "circular and paradoxical."[50] Appellant's belief is that "[t]here were only two ways to elicit evidence that [Cpl J.A.S.] told Appellant about his prior fight: through Cpl J.A.S. or through Appellant."[51] Appellant thus concludes that "the error *did* preclude Appellant from presenting *any* evidence on the state of mind defense."[52] This is simply not true. He was in no way precluded from either testifying as to his own state of mind, or calling another witness, or laying the foundation a different way. The military judge did not err in sustaining the Government's objection that this question lacked foundation. Moreover, the military judge specifically did not preclude the trial defense team from laying the proper foundation, if it could, for this question to Cpl J.A.S. Furthermore, at the conclusion of his testimony, Cpl J.A.S. was subject to being recalled.

     b. <u>Regardless, even if somehow relevant, the evidence about some unrelated altercation would violate Military Rule of Evidence 403.</u>

Rule of Evidence 403 presumes that the evidence in question is relevant. In this instance, the military judge did not explain his Mil. R. Evid. 403 balancing test with any precision, and so we will afford no deference to his ruling in that respect. In conducting our own Mil. R. Evid. 403 balancing test of the evidence de novo, and assuming that defense counsel's proffer was accurate, we find it properly excludable (even if foundational relevance had been established). Even if Appellant had been aware of a prior fight between Cpl J.A.S. and someone else, this line of questioning would have amounted to a confusing waste of time.

---

[47] R. at 1103.

[48] R. at 761.

[49] R. at 761.

[50] Appellant's Brief at 33.

[51] Appellant's Brief at 36.

[52] Appellant's Brief at 35.

Therefore, in reviewing this de novo, we find that even if the evidentiary foundation had been laid, the objection was properly sustained under Mil. R. Evid. 403 as well. A testimonial journey down this rabbit hole would have been both confusing and a needless waste of time for the members.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[53]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[53] Articles 59 & 66, UCMJ.